# EXHIBIT A

# EXHIBIT A

1 | KJC LAW GROUP, A.P.C.
Kevin J. Cole (SBN 321555)
2 | 9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
3 | Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com
4
*Attorneys for Plaintiff*
5 | *Chemring Energetic Devices, Inc.*

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/18/2024 8:52 AM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Mercer, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| CHEMRING ENERGETIC DEVICES, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC. dba HARTFORD CASUALTY INSURANCE COMPANY, a Delaware Corporation; and DOES 1 through 10, INCLUSIVE,<br><br>Defendants. | CASE NO.: 24LBCV00109<br><br>**COMPLAINT FOR:**<br><br>1. **PROFESSIONAL NEGLIGENCE; and**<br><br>2. **BREACH OF FIDUCIARY DUTY.**<br><br>(*Jury Trial Demanded*) |

COMPLAINT

Plaintiff Chemring Energetic Devices, Inc. complains and alleges as follows based on personal knowledge as to itself, on the investigation of its counsel, and on information and belief as to all other matters.

## INTRODUCTION AND SUMMARY OF CLAIMS

1. In October 2012, CHG Group, Inc.—the parent company to Plaintiff Chemring Energetic Devices, Inc. ("CED" or "Plaintiff")—purchased a workers' compensation insurance policy from Defendant The Hartford Financial Services Group, Inc. dba Hartford Casualty Insurance Company ("Hartford" or "Defendant"). CHG Group, Inc. renewed its policy annually for successive years, and the policy remained in place from October 31, 2016 – October 31, 2017. Under the policy, Hartford promised to defend and indemnify workers' compensation claims against Plaintiff which arose in the State of California.

2. In April 2019, Jeannett Villarreal filed a workers' compensation claim against CED, her former employer, alleging that she was exposed to harmful chemicals during her employment. Also in April 2019, CED tendered the complaint to Hartford, thereby notifying Hartford of its duty to defend and indemnify CED. Hartford—which included Law Offices of Lydia Bouzaglou-Newcomb ("Newcomb Law")—agreed to defend and indemnify CED, but that defense fell far short of what competent attorneys would have done. Indeed, Hartford's legal malpractice cost CED hundreds of thousands of dollars.

3. At a minimum, Hartford failed to convey an early favorable settlement offer. Of course, it is a basic rule that an attorney must promptly notify a client about settlement offers. *See* Cal. R. Prof. Conduct 1.4.1(a)(2) ("A lawyer shall promptly communicate to the lawyer's client . . . all amounts, terms, and conditions of any written offer of settlement made to the client in all other matters."); Cal. Bus. & Prof. Code § 6103.5(a) ("A licensee of the State Bar shall promptly communicate to the licensee's client all amounts, terms, and conditions of any written offer of settlement made by or on behalf of an opposing party."); *see also* ABA Model Rules Prof. Conduct, Rule 1.4, Comment 2 (". . . a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance . . .").

4. Hartford clearly violated these rules—and its violations resulted in CED's paying substantially more than it should have to settle Ms. Villarreal's claims. This lawsuit seeks to hold Hartford accountable for CED's damages.

## JURISDICTION AND VENUE

5. Subject matter jurisdiction is proper in this Court because the amount in controversy is within this Court's jurisdictional limit.

6. Personal jurisdiction and venue are proper in this Court. By agreeing to defend CED from Ms. Villarreal's claims—which were litigated and adjudicated in Long Beach, California (Long Beach WCAB Case No. ADJ12109234)—but then failing to provide a proper defense, Hartford purposely directed its actions to the forum state of California such that it could reasonably anticipate being haled into a California court. (*Taylor-Rush v. Multitech Corp.* (1990) 217 Cal.App.3d 103, 118 ["The essence of [*Calder v. Jones* (1984) 465 U.S. 783] is that intentional tortfeasors should be prepared to defend themselves in any jurisdiction where they direct their alleged tortious activity."].) In addition, this controversy arises out of Hartford's contacts with the forum state of California—i.e., the litigation and adjudication of Ms. Villarreal's workers' compensation insurance claim—and the assertion of personal jurisdiction would comport with "fair play and substantial justice." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 [establishing the three-part personal jurisdiction test]; see also *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472–473.) Further, on information and belief, Hartford conducts substantial business in, and maintains significant contacts with, Los Angeles County, California—including by (i) frequently providing workers' compensation insurance policies for Los Angeles-based businesses, and (ii) defending claims from those policies.

## PARTIES

7. Plaintiff Chemring Energetic Devices, Inc., a subsidiary of CHG Group, Inc., is and at all relevant times was a Delaware corporation whose principal place of business is in Downers Grove, Illinois.

8. Defendant The Hartford Financial Services Group, Inc. dba Hartford Casualty Insurance Company is and at all relevant times was a Delaware corporation whose principal place of business is in Hartford, Connecticut.

9. Defendant DOES 1 to 10 are alter egos, affiliates, related companies, and/or agents of Defendant The Hartford Financial Services Group, Inc. dba Hartford Casualty Insurance Company and/or parties otherwise responsible for the actions alleged in this Complaint. At this time, Plaintiff does not know the true names and forms of DOES 1 to 10 and therefore sues these defendants by fictitious names. Plaintiff alleges that these DOE defendants are responsible in some manner for the actions alleged in this Complaint and that Plaintiff's damages were caused by these DOE defendants. Once the true identities and forms of these DOE defendants are ascertained, Plaintiff will amend its Complaint accordingly.

## FACTUAL ALLEGATIONS

10. This case results from Hartford's failure to properly defend CED from Jeannett Villarreal's workers' compensation insurance claim.

11. From the start, Hartford recognized the "potential exposure" from Ms. Villarreal's claim due to the "complexity of [her] injuries." *See* **Exhibit A** (May 2, 2019 e-mail from Hartford). Ms. Villarreal began working at Hi-Shear Technology Corporation as an ordinance assembler in Torrance, California in March 2005. (Hi-Shear was acquired by Chemring Group PLC in 2009 and was merged with CED in 2014.) Ms. Villarreal's employment with CED continued through May 2017, during which time she worked with certain chemicals. From working with those chemicals, Ms. Villarreal claimed injuries to her digestive, excretory, urology, and nervous systems. She filed her workers' compensation claim on April 15, 2019.

12. Several weeks later, Hartford—which by that point had recognized the severity of Ms. Villarreal's claim—assigned the claim to its "Workers' Compensation Major Case Unit" (which included Newcomb Law). *Id.*, **Exhibit A**.

13. Over a year and three months into the litigation—by which point Hartford had subpoenaed (and presumably analyzed) Ms. Villarreal's medical records—Ms. Villarreal made a $300,000 opening settlement demand on August 5, 2020. *See* **Exhibit B** (Aug. 5, 2020 letter from attorney Joseph A. Kritzer). As alleged in the settlement letter from her attorney, Ms. Villarreal worked with a chemical called "Loctite EA 9395," which exposed her to a carcinogen ("carbon black"), and which resulted in her developing bladder cancer. *Id.*

14. As any defense lawyer knows, a plaintiff's opening settlement offer is meant to be negotiated; hardly ever is it the "last, best and final offer." And it is clear from the tone and wording of Ms. Villarreal's settlement letter that $300,000 was not a "take-it-or-leave-it" ultimatum. *Id.* ("I would recommend a C&R at this time for $300,000.00 . . . If you are interested in such a resolution . . .").

15. CED, however, never had the chance to negotiate down Ms. Villarreal's $300,000 opening offer because it wasn't **until two and a half years later**, on January 17, 2023, that Hartford revealed it to CED. Of course, by then—and *several* Hartford lawyers later—Ms. Villarreal increased her demand to $500,000.[1]

16. CED ultimately settled Ms. Villarreal's claim for $350,000 (in February 2023). But the ultimate settlement is not the focus of CED's claim. Rather, that Ms. Villarreal settled her claim for $150,000 *less* than her last offer strongly suggests she would have done the same two and a half years earlier; i.e., CED certainly could have settled with Ms. Villarreal for substantially less than $300,000 several years ago. Of course, Hartford's failure to convey Ms. Villarreal's August 5, 2020 offer deprived CED of any opportunity to pay a much lower settlement (in addition to notably less legal fees).

## CAUSES OF ACTION

### First Cause of Action

**(For Professional Negligence [Legal Malpractice], By Plaintiff Chemring Energetic Devices, Inc. Against The Hartford Financial Services Group, Inc. dba Hartford Casualty Insurance Company; and DOES 1 through 10, inclusive)**

17. CED repeats and realleges the allegations contained in every preceding paragraph.

18. In April 2019, Hartford agreed to defend the workers' compensation insurance claim brought by Jeannett Villarreal—a former CED employee—thereby establishing an attorney-client relationship between the parties.

19. As defense counsel in Long Beach WCAB Case No. ADJ12109234 (Ms. Villarreal's workers' compensation proceeding), Hartford (which included Newcomb Law) owed a duty of care to

---

[1] By 2023, Hartford had assigned six lead attorneys to the matter, and Robert Werner, the assigned Claims Specialist, recommended replacing Hartford's in-house counsel with outside counsel Lewis Brisbois. Chemring concurred, and initial dealings with Lewis Brisbois proved favorable until June 2023, when Chemring learned that the matter was settled for $50,000 more than the sum communicated to Chemring.

1. CED, requiring it to exercise the skill, prudence, and diligence ordinarily exercised by other similarly situated lawyers. Further, as a purported specialist in litigating and trying high-stakes, workers' compensation cases, the professional services rendered by Hartford should have been comparable to other complex workers' compensation trial specialists, imposing upon Hartford a higher, specialist standard of care.

20. Contrary to that duty, Hartford was professionally negligent in (among other things) failing to convey Ms. Villarreal's August 5, 2020 settlement demand—a clear violation of Rule 1.4.1, a breach of its duty to properly defend CED, and the result of which undoubtedly led to CED paying more than it should have.

21. The negligent acts and omissions of Hartford were below the standard of care for comparable attorneys who practice in this community, especially attorneys who specialized in handling complex workers' compensation trials. Hartford's professional negligence was a substantial factor in CED's paying more than it should have to settle Ms. Villarreal's claims. The proper handling of this case would have given CED the opportunity to pay a much lower settlement (in addition to notably less legal fees). *See Viner v. Sweet*, 30 Cal.4th 1232, 1241 (2003) ("In a litigation malpractice action, the plaintiff must establish that but for the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred."); *Barnard v. Langer*, 109 Cal.App.4th 1453, 1461–63 (2003) (acknowledging that, with respect to causation, the appropriateness of a settlement can be analyzed in hindsight).

22. As a direct and proximate result of Hartford's incompetence and professional negligence, CED has suffered compensatory damages in an amount to be proven at trial.

## Second Cause of Action

(For Breach of Fiduciary Duty, By Plaintiff Chemring Energetic Devices, Inc. Against The Hartford Financial Services Group, Inc. dba Hartford Casualty Insurance Company; and DOES 1 through 10, inclusive)

23. CED repeats and realleges the allegations contained in every preceding paragraph.

24. A client's retention of a law firm gives rise to a fiduciary relationship between the parties. The scope of an attorney's fiduciary obligations is determined as a matter of law based on the California

Rules of Professional Conduct, together with other statutes and general principles relating to other fiduciary relationships. These fiduciary duties include duties of care and loyalty and an obligation to promptly notify a client about settlement offers. *See* Cal. R. Prof. Conduct 1.4.1(a)(2) ("A lawyer shall promptly communicate to the lawyer's client . . . all amounts, terms, and conditions of any written offer of settlement made to the client in all other matters."); Cal. Bus. & Prof. Code § 6103.5(a) ("A licensee of the State Bar shall promptly communicate to the licensee's client all amounts, terms, and conditions of any written offer of settlement made by or on behalf of an opposing party."); *see also* ABA Model Rules Prof. Conduct, Rule 1.4, Comment 2 (". . . a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance . . .").

25. In breach of its fiduciary duties and professional responsibilities to CED, Hartford (which included Newcomb Law) committed *at least* the following wrongful acts and omissions:

    a. Hartford improperly staffed the underlying legal action resulting in unnecessary and excessive fees;

    b. Hartford failed to properly instruct, direct, assign, monitor, and supervise the work of attorneys and support staff, resulting in the unnecessary and duplicative expenditure of time and excessive and unnecessary fees and costs; and

    c. Hartford failed to convey a favorable settlement offer to its client.

26. As a direct and proximate result of Hartford's various fiduciary breaches, CED has suffered compensatory damages in an amount to be proven at trial.

## JURY DEMAND

27. CED hereby demands that this matter be tried before a jury under California Code of Civil Procedure section 631.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chemring Energetic Devices, Inc. prays for judgment against Defendant The Hartford Financial Services Group, Inc. dba Hartford Casualty Insurance Company as follows:

1. Compensatory damages, and other economic and consequential damages in an amount to be determined at trial;

2. Costs of suit;

3. Pre- and post-judgment interest; and

4. Such other and further relief as the Court deems just and proper.

DATED: January 17, 2024         **KJC LAW GROUP, A.P.C.**

                                          By:   /s/ *Kevin J. Cole*
                                                  Kevin J. Cole, Esq.

                                                  *Attorneys for Plaintiff*
                                                  *Chemring Energetic Devices, Inc.*

# Ex. A

| | |
|---|---|
| **From:** | Blamey, Frances (GB and WC Claims) <Frances.Blamey@thehartford.com> |
| **Sent:** | Thursday, May 2, 2019 3:48 PM |
| **To:** | gerrig@chemringgroup.com; Gwen Allar |
| **Cc:** | DeMont, Kari Y (GB and WC Claims); Robert.D.Newberry@marsh.com; dbuzzard@cds.com; Lisa Malkoff |
| **Subject:** | Y2PC53197 Jeannett Villarreal v CHG Group, Inc - Transfer to Major Case Unit [HIGHLY RESTRICTED] |

Based upon the complexity of the injuries and potential exposure, this file has been transferred to the Major Case Unit from the Western Workers Compensation Claims Center. Please note my contact information below as I am located in a different office, although I am still on Pacific time.

As Robert had previously indicated, I will be referring this to defense counsel right away. It would be most helpful to get the MSDS sheets for the chemicals the claimant worked with as well as the air quality tests that may have been done by Belen Fernandez.

I have access to anything you've already sent to Robert Werner so there is no need for you to have duplicate work.

I will also need the standard wage statement and job description and I'll send those forms separately to Gwen.

Sincerely,

*Skoshi Blamey*

**Frances "Skoshi" Blamey**
Claim Specialist
Major Case Unit – Workers' Compensation

It is my goal to provide you with exceptional service. You may receive a Claim survey by email that will give you the o or my Director, <u>Kevin.Wagenknecht@thehartford.com</u> if you have any comments regarding any aspect of your claim.

The Hartford Financial Services Group, Inc.
P.O. Box 14476
Lexington, KY 40512

Direct: 315-233-1171
Toll Free: 866-514-4833 ext 2304456
Fax: 888-459-1636

Frances.Blamey@TheHartford.com

www.thehartford.com
www.facebook.com/thehartford
www.twitter.com/thehartford

Confidentiality Notice: The information in this electronic transmission is privileged and confidential information, intended for the addressee listed above. If the reader of this message is not the intended receiver/recipient, you

are notified that dissemination, copy or distribution of this communication is prohibited and all copies, both electronic and paper should be destroyed.

*************************************************************
This communication, including attachments, is for the exclusive use of addressee and may contain proprietary, confidential and/or privileged information. If you are not the intended recipient, any use, copying, disclosure, dissemination or distribution is strictly prohibited. If you are not the intended recipient, please notify the sender immediately by return e-mail, delete this communication and destroy all copies.
*************************************************************

# Ex. B

This document was first provided to K. Konar by R. Nettles (Hartford) on 1/17/2023

# LAW OFFICE OF
# JOSEPH A. KRITZER

A Professional Law Corporation

*Certified Specialist
Workers' Compensation Law

2790 Skypark Drive, Suite 100
Torrance, CA 90505

Telephone (310) 373-6821
Facsimile (310) 378-2783
Email: jkritzer@msn.com

August 5, 2020

Nancy Mikhail
LAW OFFICES OF LYDIA B. NEWCOMB
P.O. BOX 2282
Brea, Ca 92822

RE:  JEANNETT VILLARREAL vs. CHEMRING
     WCAB No.: ADJ12109234
     DOI:       CT: 03/01/2005-05/01/2017
     Claim No.: 2290055182
     Our File No.: 2975

Dear Ms. Mikhail:

Thank you for sending me the various MSDS sheets on this case. While my client claims to have worked with more chemicals than this, I see that at least one of the chemicals has been directly linked to bladder cancer, which is what my client has been dealing with. In particular, the MSDS for Loctite EA 9395 part B contains carbon black. According to government studies, carbon black has been directly linked to bladder cancer.

As a result of the bladder cancer, the Applicant is experiencing psyche depression, urological problems, kidney problems and stomach problems. Therefore, I am now amending her claim to include these resulting problems. A copy of the amended application which I am filing with the WCAB will be served on you.

If you would like to settle this case prior to a QME or industrial finding, I would recommend a C&R at this time for $300,000.00. I assume that the group medical insurance lien on this case will be very high, and Thomas finding will be very helpful for your client. Also, I assume that the Applicant's future medical cost will be astronomical.

If you are interested in such a resolution, please forward me the paperwork, and I will present the settlement proposal to my client.

Very truly yours,

LAW OFFICE OF JOSEPH KRITZER

JOSEPH KRITZER
JAK:mnv
Cc:  Scott Silberman, Esq.